UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00269-JCM-EJY |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| LESEAN BRADDOCK and BYRON PORTER, | |
| Defendants. | |

Before the Court is Defendant Lesean Braddock's ("Braddock") Motion to Sever. ECF No. 63. The Court has considered Braddock's Motion and the Government's Response (ECF No. 66). No reply was filed.

**I.   FACTUAL BACKGROUND**

The case involves armed robberies at three locations in the Las Vegas valley. These locations include a Terrible Herbst on Warm Springs Road, a Circle K, also on Warm Springs Road, and Game Stop on Windmill Parkway. Video surveillance was apparently captured at all three locations.

On September 6, 2019, a clerk at the Terrible Herbst stated that a man (later identified as Braddock's co-defendant Byron Porter ("Porter")) entered the store wearing black clothing and a ski mask. He carried a semi-automatic rifle. When the suspect left the store, another witness said Porter got into a silver Jeep Cherokee with California plates.

On or about September 8, 2019, a man (also later identified as Porter) entered the Circle K wearing black clothing and carrying a black semi-automatic rifle. When this suspect left the store, he was observed getting into what was believed to be a silver Nissan SUV.

On September 9, 2019, two masked men entered the GameStop store. Both men wore dark clothing, one was carrying a duffle bag, and the other the semi-automatic rifle. The men were believed to be Black, and Surveillance footage showed the suspects arriving in a silver or light gray colored SUV.

On September 25, 2019, a man pawned an Xbox stolen from the GameStop. Surveillance footage, together with identification presented to the pawn shop, confirmed the individual pawning the Xbox was Porter. Porter's sister, Arika Gray ("Gray"), who is said to be Braddock's wife, pawned an Xbox approximately two weeks previously and is the registered owner of a silver Jeep Cherokee.

Law Enforcement Officers obtained a search warrant for Gray's apartment on Warm Springs Road. Braddock and Porter were present in the apartment at the time the warrant was executed. The Government states that law enforcement recovered clothing matching clothing worn by the suspects during the robberies, a duffle bag matching the duffle bag carried during the GameStop robbery, a Sony PlayStation 4 matching a system stolen from the GameStop, and a black rifle matching the rifle used during the robberies.

Braddock and Porter were interviewed by Henderson Police Department after *Miranda* warnings were issued. Braddock asserted his 5th Amendment rights and denied involvement in the robberies. Porter confessed to his role as gunman in the three robberies and stated that Braddock committed the robbery at the GameStop with him. Porter is also reported as stating that Braddock gave Porter the rifle to use during the robberies, and did the "scouting" to find possible locations to rob. Porter stated Braddock provided Porter information on what to do during the robberies. Porter claims that Braddock stated he would kick him out of the apartment if Porter did not assist with the robberies. Porter was also able to provide specific details of the crimes including clothing worn during the Terrible Herbst robbery, and he confirmed saying "thank you for your service" as he ran out of the Circle K.

Defendants were indicted in October 2019 on seven counts including Conspiracy to Commit Interference with Commerce by Robbery, Interference with Commerce by Robbery, and Brandishing of a Firearm During and in Relation to a Crime of Violence.

**II.    DISCUSSION**

    A.    <u>The Severance Standard</u>.

Rule 8(b) of the Federal Rules of Criminal Procedure allows for two or more defendants to be indicted in the same charging document "if they are alleged to have participated in the same act

or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 14 provides "[r]elief from [p]rejudicial [j]oinder." This Rule allows the Court to "sever the defendants' trials, or provide any other relief that justice requires" if consolidation of a trial "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). However, the Ninth Circuit holds that:

> Defendants jointly indicted ordinarily should be jointly tried. Serious consideration must be given to judicial economy. The burden is on the defendant to show clear, manifest, or undue prejudice from a joint trial. … Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*.

*United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (first internal citation and quote marks omitted). Moreover, "joint trials conserve [public] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (internal citation and quote marks omitted).

A series of United States Supreme Court cases discuss the standard to be applied by district courts when they are asked to decide motions to sever the trials of criminal defendants. These cases include, but are not limited to, *Bruton v. United States*, 391 U.S. 123 (1968), *Richardson v. Marsh*, 481 U.S. 200 (1987), *Gray v. Maryland*, 523 U.S. 185 (1998), and *Crawford v. Washington*, 541 U.S. 36 (2004).

"*Bruton* established that in joint criminal trials, the introduction of 'powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant,' but who does not testify, violates the defendant's Sixth Amendment right to confront the witnesses against him." *Lucero v. Holland*, 902 F.3d 979, 983 (9th Cir. 2018) (*citing Bruton*, 391 U.S. at 135-36). Next, in *Richardson*, the Supreme Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when … the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211 (citation omitted). This requires "any reference to … another person

1 being involved in the crime" even if the defendant's statements link him to "the confession's
2 content." *United States v. Wilder*, Case No. 2:16-cr-00062-LRH-GWF, 2017 WL 2637390, at *3
3 (D. Nev. June 19, 2017) *citing Richardson*, 481 U.S. at 202-05.

4       In *Gray*, the Supreme Court considered and rejected the use of blanks, symbols or words,
5 such as "delete" or "deletion," when a defendant's name appears in a written confession that is read
6 into the record. 523 U.S. 188. "The Court reasoned that a jury will often realize that such a redacted
7 confession refers specifically to the defendant, and an obvious deletion may call the jurors' attention
8 specifically to the removed name and encourage speculation about the reference." *United States v.*
9 *Peterson*, 140 F.3d 819, 821 (9th Cir. 1998) *citing Gray*, 523 U.S. at 186. The *Gray* Court explained
10 that a jury will react to a redacted confession and unredacted confession in the same way, realizing
11 that redactions "specifically refer to the defendant." *Gray*, 523 U.S. at 193. Jurors will end up
12 speculating about the redaction and "may overemphasize the importance of the confession's
13 accusation." *Id*. Thus, the Court held that the confession at issue in that case substituting "blanks
14 and the word 'delete'" for the defendant's name "falls within the class of statements to which
15 *Bruton*'s protections apply." *Id.* at 197.

16       "Crawford added a new layer to the Sixth Amendment analysis—that the Amendment's
17 Confrontation Clause right attaches only … to 'testimonial statements.'" *Lucero*, 902 F.3d at 984
18 *citing Crawford*, 541 U.S. at 68. The *Crawford* Court did not provide "a comprehensive definition
19 of testimonial" statements, but did include within this classification "ex parte in-court testimony or
20 its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony
21 that the defendant was unable to cross-examine, or similar pretrial statements that declarants would
22 reasonably expect to be used prosecutorially; … extrajudicial statements … contained in formalized
23 testimonial materials …; [or] statements that were made under circumstances which would lead an
24 objective witness reasonably to believe that the statement would be available for use at a later trial."
25 *Crawford*, 541 U.S. at 51-52 (internal citations and quotation marks omitted). "[I]nterrogations by
26 law enforcement officers fall squarely within" the class of testimonial statements. *Id*. at 53.

27       Glossing *Crawford*, the Court in *Davis v. Washington*, 547 U.S. 813, 822 (2006), explained
28 that statements are testimonial when they result from questioning "the primary purpose of [which]

… is to establish or prove past events potentially relevant to later criminal prosecution." *See also id*. at 826 (explaining it makes no difference if the statement is reduced to writing by the alleged perpetrator "or embedded in the memory (and perhaps notes) of the interrogating officer"). In 2011, the U.S. Supreme Court stated that "to determine … the primary purpose of an interrogation … we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Byrant*, 562 U.S. 344, 359 (2011) (internal citations and quote marks omitted). Importantly, the admission of a codefendant's "statement which does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's Sixth Amendment rights." *U.S. v. Benzer*, Case No. 2:13-cr-00018-JCM-GWF, 2014 WL 7240091, at *2 (D. Nev. Dec. 18, 2014) *citing United States v. Hoac*, 990 F.3d 1099, 1105 (9th Cir. 1993).[1]

B.  Braddock's Argument.

Braddock seeks severance because Porter's statements make alleged admissions that implicate Braddock in alleged armed robberies that "will almost certainly be introduced into evidence against Porter … at trial as a statement by a party opponent under FRE 801(d)(2)(A)." ECF No. 63 at 5. Braddock argues that Porter's statements are inadmissible against Braddock "as an alleged co-conspirator statement [under] FRE 801(d)(2)(E) because the post-arrest statement was not made 'during and in furtherance of the conspiracy' as is mandated by the [R]ule." *Id*.[2] Braddock concludes that this circumstance creates a *Bruton* issue that cannot be cured by a limiting instruction. *Id*.

Braddock further argues that his defense is inconsistent or conflicts with that of his codefendant creating mutually exclusive defenses. *Id*. at 6. Braddock states that he is innocent while "his co-defendant admits to his involvement in the crime spree and claims that Mr. Braddock not only participated, but also orchestrated the events." *Id*. Braddock further claims that Porter intimates

---

[1] In addition to the above, the Ninth Circuit has adopted a four part test that may "aid the district court's determination" whether to sever. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008). This test evaluates: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) [whether] instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [the movants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*.

[2] No opposition to this position was offered by the Government.

5

that Braddock coerced him into committing crimes and that "it is plausible that Porter will assert some sort of coercion or duress defense" which is "completely antagonistic to" Braddock's defense of innocence. *Id*. Finally, Braddock argues that the spillover effect of Porter's admissions and accusations that Braddock was the "criminal mastermind of the events" as to implicate Braddock's due process rights guaranteeing him a fundamentally fair criminal trial. *Id*. at 6 and 8.

C. The Government's Argument.

In addition to reiterating that the presumption is strong in favor of joint trials of those indicted together, the Government states that Porter and Braddock are charged in all counts of the indictment including conspiracy and robberies, "much of the evidence against Braddock" overlaps evidence to be introduced against Porter, evidence was "recovered from Braddock's apartment," and "many of the same witnesses will be called against both" defendants. The Government states that Braddock and Porter's defenses are not antagonistic and spillover of evidence does not support severance,

D. Analysis.

Severance is not required in this case. First, with respect to Braddock's concerns regarding his Sixth Amendment Right to cross examination, Porter's statements can be redacted to eliminate not only Braddock's name, but also any reference to Braddock's existence thereby complying with the Supreme Court's holding in *Richardson*. 481 U.S. at 211. Redactions to statements attributed to Porter can also be made to remove any suggestion that "another person was involved in the crime." *Wilder*, 2017 WL 2637390, at *3 *citing Richardson*, 481 U.S. at 202-205. That is, Porter's statements (provided by Braddock at ECF No. 63-1 at 13) can be redacted such that Porter's admission regarding his own criminal activity remains available for introduction, but all of Porter's statements that reference Braddock, Braddock's alleged participation in the crimes, and Braddock's alleged interactions in preparation for the crimes are omitted in their entirety. Specifically, Porter's statements may be introduced against Porter to show "that … he … committed the robbery at the Game Stop and he also admitted to pawning the stolen Xbox at the EZ Pawn." *Id*. Porter's alleged ability "to give intimate details of the crimes including what shoes he was wearing in the Terrible's and that he stated 'thank you for your services' as he then ran out of the Circle K" (*id*.), may be admissible as these statements do not mention any other participant in the robberies. With such

redactions, the Court finds that Porter's statements admitting involvement in criminal activity do not implicate Braddock's existence or involvement in such activity thereby preventing a violation of Braddock's constitutionally protected trial right to cross examination.

Second, Braddock argues that he and his codefendant have "inconsistent or conflicting defenses" that are mutually exclusive. ECF No. 63 at 6. "Antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a codefendant ... is insufficient to require severance." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996) (internal citations omitted); *see also United States v. Arias–Villanueva*, 998 F.2d 1491, 1502 (9th Cir. 1993), *overruled on other grounds by United States v. Jimenez–Ortega*, 472 F.3d 1102, 1103-04 (9th Cir. 2007) (defendant not entitled to severance simply because codefendant presented defense based on coercion by defendant). "Mere inconsistency in defense positions is insufficient" to warrant severance. *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (internal citation omitted). While mutually antagonistic defenses may prevent a jury from reliably determining guilt or innocence thereby warranting severance, this occurs only when "the core of the codefendant's defense is so irreconcilable with the core of the [moving defendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, 87 F.3d at 1072. Nonetheless, "[w]hen defendants present mutually exclusive defenses, the jury often cannot 'assess the guilt or innocence of the defendants on an individual and independent basis.'" *U.S. v. Mayfield*, 189 F.3d 895, 899, 900 (9th Cir. 1999) *citing Tootick*, 952 F.2d at 1082. If "the core of the co-defendant's defense is so irreconcilable with the core of … [the other codefendant's] own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant," severance is proper. *Id.* at 900 *citing Throckmorton*, 87 F.3d at 1072.

Braddock's claim of innocence in comparison to Porter's admissions regarding his own involvement are not "completely antagonistic" as Braddock claims. In this case, unlike the facts in *Mayfield* in which limiting instructions were not given or were belatedly given, and co-defense counsel repeatedly flaunted orders of the court regarding the introduction of inadmissible evidence (*id.* at 900), lawful and appropriate redaction of Porter's statements, limiting instructions, and

compliance with Court orders regarding the prohibition against the introduction of impermissible evidence against Braddock will prevent violations of Braddock's right to a fair, albeit perhaps not perfect, trial. *Bruton*, 391 U.S. at 135 ("[a] defendant is entitled to a fair trial but not a perfect one") (internal citation omitted). The introduction of Porter's admissions or involvement in criminal activities, while removing all references to Braddock, does not render Braddock's defense of innocence inconsistent with Porter's admissions. This lack of inconsistency, together with the appropriate instruction to the jury and prevention of introduction of inadmissible evidence against Braddock belies a finding that the core of Porter's defense is so irreconcilable with the core of Braddock's defense that the acceptance of Porter's defense by the jury precludes acquittal of Braddock.

When a trial involves two or more codefendants, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. In fact, as quoted above the Ninth Circuit holds that in order for Braddock to be entitled to severance in this case, he must show that the core of Porter's defense is so irreconcilable with the core of his own defense that the acceptance of Porter's theory will preclude his acquittal. *Throckmorton*, 87 F.3d at 1072. With redactions of Porter's statements, even if he introduces a claim of duress or coercion, does not preclude acquittal of Braddock. *Arias–Villanueva*, 998 F.2d at 1502.

Third, with respect to Braddock's spillover argument, he claims that his innocence defense will be prejudiced by Porter's admission of involvement in the robberies and Porter's allegations regarding Braddock lead in the crimes. ECF No. 63 at 8. However, if Braddock's alleged lead and involvement in the crimes are redacted, there will be no Sixth Amendment violation of Braddock's right to confrontation and thus no spillover. Moreover, Braddock fails to explain how introduction of Proter's admissions cannot be adequately addressed through a limiting instruction. Well settled law establishes that "[a] defendant seeking severance based on the spillover effect of evidence admitted against a codefendant must also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (citation omitted). In what appears to be Braddock's attempt to meet the standard required by law, he states that a limiting

instruction would, in fact, be "insufficient." ECF No. 63 at 5. This conclusory statement is not persausive and does not establish the basis for severing Braddock's trial from the trial of his codefendant.

Finally, Braddock mentions that the weight of the evidence may prevent the jury from compartmentalizing the "evidence offered against the respective co-defendants." ECF No. 63 at 7. But, the Ninth Circuit repeatedly observes that juries "listen[] to and follow[] the trial judge's instructions." *U.S. v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant." *U.S. v. Matta–Ballesteros*, 71 F.3d 754, 771 (9th Cir. 1995) (quoting *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir.), *cert. denied*, 484 U.S. 928 (1987). *See also United States v. Van Cauwenberghe*, 827 F.2d 424, 432 (9th Cir. 1987) *citing United States v. Rasheed*, 663 F.2d 843, 854-55 (9th Cir. 1981), *cert. denied*, 454 U.S. 1157 (1982) (even though more evidence was presented against a codefendant, "the district court instructed the jury to consider the guilt or innocence of each co-defendant separately, in light of the evidence against that defendant, the jury is presumed to have obeyed"); *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir.), *cert. denied*, 513 U.S. 977 (1994) (neither a quantitative disparity in the evidence nor a prejudicial spillover effect is sufficient in and of itself to warrant a severance). While there is some evidence pertaining to Porter that may not be introduced against Braddock, there is substantial overlap in evidence that will be introduced irrespective of redaction of Porter's admissions. Thus, the weight of the evidence in this case does not warrant severance.

### III.    ORDER

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion to Sever (ECF No. 63) is DENIED.

Dated this 23rd day of September, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

9